495 So.2d 464 (1986)
Earl Junior COATES
v.
STATE of Mississippi.
No. 55,784.
Supreme Court of Mississippi.
September 24, 1986.
Rehearing Denied October 29, 1986.
Michael R. Farrow, Columbus, for appellant.
Edwin Lloyd Pittman, Atty. Gen., by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the court:

I.
Factually this appeal presents the disquieting story of an ongoing sexual relationship *465 between a 36 year old man and his young teenage stepdaughter. Those interested in the development of the criminal procedural jurisprudence of this state, however, will find the case far more remarkable for the reverse discovery violation found: the defendant, not the prosecution, for whatever reason withheld discoverable material evidence and then sought to use same at trial. Recognizing that the day of trial by ambush was over and that, subject to constitutional limitations not applicable here, discovery in criminal cases is a two-way street, the Circuit Court sustained the prosecution's objections to the undiscovered evidence. For the reasons articulated below, we consider that the Circuit Court was wholly within its authority in this ruling and, as a consequence, we affirm the judgment below.

II.
Earl Junior Coates, Defendant below and Appellant here, has been indicted, tried and convicted of the offense of sexual battery. Miss. Code Ann. § 97-3-95 (Supp. 1985). According to the indictment, Coates committed sexual battery upon his then 15 year old stepdaughter, C.H., "on or about or before the 31st day of August, 1983," without her consent.
On this appeal no question is raised regarding the sufficiency of the evidence to undergird a conviction. For this reason, no useful purpose would be served here by reciting the sordid details of the sexual encounters between Coates and his stepdaughter. Suffice it to say that C.H. testified  and Coates in open court admitted  to a continuing series of substantially similar sexual encounters including the specifically charged act of cunnilingus. See Miss. Code Ann. § 97-3-97(a) (Supp. 1985).
There is only one significant variance in the evidence. C.H. testified that the acts in which she participated with Coates were all done without her consent and by virtue of Coates' repeated threats of death or serious bodily harm. Coates, on the other hand, denied any such threats and insisted that everything he did was with C.H.'s consent. While it is certainly true that under our law consent is a defense to a charge of sexual battery committed with a person fourteen years of age and over, Miss. Code Ann. § 97-3-95(a) and (c) (Supp. 1985), the jury had before it substantial credible evidence upon which it could have based a finding that C.H. was threatened and did not voluntarily consent. See Gill v. State, 485 So.2d 1047, 1049 (Miss. 1986); Hines v. State, 472 So.2d 386, 392 (Miss. 1985); Bennett v. State, 468 So.2d 855, 856 (Miss. 1985).
Indeed, the jury did on May 18, 1984, return a verdict finding Coates guilty as charged in the indictment. Several days later, the court held a sentencing hearing, Rule 5.13, Miss.Unif.Crim.R.Cir.Ct.Prac., and on May 22, 1984, sentenced Coates to serve a term of ten years in the custody of the Mississippi Department of Corrections. Coates' motion for a new trial was overruled and this appeal has followed.

III.
Coates' principal assignment of error challenges the Circuit Court's exclusion from evidence of certain letters his stepdaughter, the prosecutrix, had written to him during September and October of 1983. The record reflects that the prosecution's objections to these letters was predicated upon the failure of the defense to disclose them in pre-trial discovery. Likewise, this was the basis upon which the Circuit Court sustained the objection.
The letters appear to be nine in number and aggregate 31 handwritten pages.
The discovery violations aside, the letters were competent evidence. At their core the letters reflect (on their face) a rather caring (and normal) stepfather and stepdaughter relationship, arguably substantially at odds with the prosecution's theory that Coates employed threats of violence or death and thus forced his stepdaughter to engage in sexual acts with him. On other points, the letters contain various matters which would seem to impeach the testimony of the prosecutrix as well as to contradict *466 other more peripheral parts of the case for the prosecution. On this appeal, as at trial, Coates argues that the letters were highly relevant to his defense of consent. While this might have been argued from them, the letters are simply silent regarding the aspect of the relationship between Coates and his stepdaughter which is the subject of this prosecution.
On May 10, 1984, a week before trial, Coates' counsel filed with the court a motion for discovery. Rule 4.06, Unif.Crim.R. Cir.Ct.Prac., in pertinent part, provides:
If the defendant requests discovery under this rule, the defendant shall, subject to constitutional limitations, disclose to the prosecutor and permit him to inspect, copy, test and photograph, the following information and material which corresponds to that which the defendant sought and which is in the possession or control of the defendant or his counsel:
* * * * * *
(2) Exhibit any physical evidence and photos to be offered in evidence; and ...
* * * * * *
Defense counsel shall make the foregoing disclosures simultaneously with the corresponding disclosure from the prosecutor.
The prosecution complied with the Coates' discovery request  at least no issue is made regarding same on this appeal.
As a part of its case-in-chief, the prosecution, of course, called C.H. as its principal witness. During the course of cross-examination, defense counsel produced the letters and sought to pursue an impeachment line of questioning. The prosecuting attorney objected on grounds that the letters had not been furnished in pre-trial discovery. Defense counsel conceded that this was so.
As the matter was developed further, it became clear that the letters were written by C.H. to Coates while he was in Louisiana during September and October of 1983. The letters had been in Coates' possession since that time. The letters had been turned over to one of Coates' attorneys sometime before trial. The attorney cross-examining C.H. stated that he had seen the letters for the first time the night before, but he acknowledged that the letters had been in the possession of co-counsel for some time prior thereto. No excuse or reason was offered why the letters were not produced in pretrial discovery in compliance with Rule 4.06. The Circuit Court did little more than enforce the rule according to its tenor when he precluded defense from use of the letters.
On appeal, Coates acknowledges the plain language of the rule but seeks to sidestep it on several grounds. First, Coates argues that the letters were impeachment evidence only and, on that score, not discoverable. While it is true they were impeachment exhibits in the sense that they contradicted testimony which had been given by the prosecutrix, these letters were much more than that. They outlined the Defendant's substantive theory of the case. In the context of the Defendant's concession that the sexual acts between him and his stepdaughter occurred, these letters went to the defense of consent in the question put otherwise of whether there were threats of force or violence. In recent decisions we have been loathe to allow the prosecution to circumvent our discovery rules by pleas that the evidence was used for impeachment purposes. See Johnson v. State, 491 So.2d 834, 836-37 (Miss. 1986); Tolbert v. State, 441 So.2d 1374, 1375 (Miss. 1983). A similar policy is appropriate for defense discovery violations.
Second, Coates acknowledges the clear language of the primary rule  that the defendant shall make discovery simultaneously with the prosecution's production of evidence the materials it was required to produce under Rule 4.06  but argues nevertheless that the rule should not be *467 construed as an exclusionary rule. Rather, Coates points to the fact that Rule 4.06 merely authorizes the circuit court, upon finding a violation of the rule, to merely "enter such ... order as it deems just under the circumstances." It may be true that in years past we have stated in the context of prosecution discovery violations that Rule 4.06 was not an automatic exclusionary rule. Turner v. State, 415 So.2d 689, 692 (Miss. 1982). Since that time we have on many occasions since that time held that orders excluding undiscovered evidence are the only appropriate antidote for Rule 4.06 violations. See, e.g., Thomas v. State, 488 So.2d 1343, 1344 (Miss. 1986); Henry v. State, 484 So.2d 1012, 1013-14 (Miss. 1986); Foster v. State, 484 So.2d 1009, 1011 (Miss. 1986); Ford v. State, 444 So.2d 841, 842-43 (Miss. 1984). The order excluding the letters from admission as evidence was one within the Circuit Court's authority by virtue of Rule 4.06.
Finally, Coates argues that the Circuit Court's preclusion of his use of these letters as evidence denied him his constitutional right to confront witnesses, i.e., C.H., the prosecutrix, to a fair trial, and to due process of law. In this respect we note that there is one sense in which discovery is not a two-way street in criminal cases. The defense has the benefit of certain constitutional protections not available to the State. Indeed, the language of Rule 4.06 imposing the obligation upon the defendant to make discovery expressly provides that it is "subject to constitutional limitations." This language, however, has reference to the accused's privilege against self-incrimination and the like, matters not at issue here.
The procedure authorized by Rule 4.06 and implemented by the Circuit Court below in no way deprived Coates of any constitutionally protected right to use the letters as evidence. Rather, the rule advised him in advance of trial that, if those letters were to be used at the trial, he had an obligation to discover them to the prosecution. If Coates and his counsel had complied with the rule, they could have used these letters to their heart's content. More specifically, if they had complied with the rule, they could have confronted C.H. with every word on the thirty-one pages. That a rule is as fair to the prosecution as to the defense in no way suggests that the defense is denied due process of law or the right to a fair trial.
The practice of trial by ambush, however savored by the skillful advocate, has long since been discredited. A trial  particularly a criminal trial where one's liberty is at stake  is not a game. It is a purposeful effort to achieve justice, its possibilities of success enhanced in no small measure by a fidelity to procedural fairness. It is in this context that this Court has been required time after time in recent years to reverse criminal convictions because at trial the prosecution was allowed to use evidence which in discovery it was obligated to disclose to the defense but for whatever reason withheld. See, e.g., Henry v. State, 484 So.2d 1012, 1013-14 (Miss. 1986); McKinney v. State, 482 So.2d 1129 (Miss. 1986); Box v. State, 437 So.2d 19, 21 (Miss. 1983); Morris v. State, 436 So.2d 1381, 1385-87 (Miss. 1983).
The rule and the policy underlying the concept of a fair trial make clear that discovery is a two-way street. Acevedo v. State, 467 So.2d 220, 224 (Miss. 1985); Box v. State, 437 So.2d 19, 25 n. 3 (Miss. 1983) (Robertson, J., concurring). While the prosecution may in a formal sense be without constitutional rights in a criminal trial, we recognize emphatically the prosecution's legitimate interest in a fair trial. Subject to limitations emanating from the defendant's constitutional rights, that interest is intolerably compromised when on the critical issue in the case the defense engages in trial by ambush.
The order that Coates could not use the C.H.-to-Coates letters at trial was an order which, under these facts and by virtue of the provisions of Rule 4.06, the Circuit *468 Court had the authority to enter. The assignment of error is denied.

IV.
The indictment charges that Coates engaged in sexual battery of C.H. "on or about or before the 31st day of August, 1983." The prosecution at trial proved that Coates engaged in an act of sexual battery toward C.H. in August of 1983 and then proved, over defense objections, that similar acts had occurred on numerous occasions for several years prior thereto. In this setting, Coates argues that the Circuit Court committed reversible error by allowing proof of other criminal acts, not charged in the indictment, of which he had not been convicted, and remote in time.
We have held too often to require extensive citation of authority that generally speaking the prosecution is not allowed to offer evidence of criminal conduct not charged in the indictment, remote in time, and with respect to which the accused has not been convicted. Tobias v. State, 472 So.2d 398, 400 (Miss. 1985); Hughes v. State, 470 So.2d 1046, 1048 (Miss. 1985); West v. State, 463 So.2d 1048, 1051-52 (Miss. 1985).
In the context of sexual crimes, however, we have long recognized a relaxation of that rule. In substantial part because of the congenital absence of hard evidence of crimes such as this, we have regarded that substantially similar prior sexual acts with the same person, that is, sexual acts of the same general type as those charged in the indictment, are as a matter of common sense probative of the issue being tried. Testimony regarding such prior acts is thus admissible. Hicks v. State, 441 So.2d 1359, 1360-61 (Miss. 1983); Speagle v. State, 390 So.2d 990, 993 (Miss. 1980); Davis v. State, 367 So.2d 445, 446 (Miss. 1979); Brooks v. State, 242 So.2d 865, 869 (Miss. 1971).
The assignment of error is denied.
CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TEN (10) YEARS IMPRISONMENT AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.J.J., and DAN M. LEE, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
PRATHER, J., not participating.