567 So.2d 215 (1990)
Lonell (Lonwell) BARNWELL
v.
STATE of Mississippi.
No. 07-KA-59207.
Supreme Court of Mississippi.
August 22, 1990.
*216 Lampkin H. Butts, Laurel, for appellant.
Mike C. Moore, Atty. Gen., Jack B. Lacy, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
PRATHER, Justice, for the court as to part I:
Lonell Barnwell, also known as "Lonwell" Barnwell, was tried by a jury for the charge of uttering a forged document, in this case, a check. He was found guilty by the jury and was sentenced by the Circuit Court of Jones County to fifteen (15) years imprisonment as an habitual offender under § 99-19-81, Miss. Code Ann. (Supp. 1990). Barnwell has now appealed his conviction to this Court, citing as error the following:
(1) THE PROOF IN THE CASE FAILED TO SHOW THAT THE APPELLANT HAD KNOWLEDGE THAT THE CHECK HE CASHED HAD BEEN FORGED.
(2) THE STATE FAILED TO PROPERLY COMPLY WITH DISCOVERY.
(3) THE APPELLANT'S SENTENCE AS A HABITUAL OFFENDER IS SO SEVERE AND DISPROPORTIONAL TO THE OFFENSE CHARGED AS TO CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT.

I.
In April of 1986, Almedia H. Cooley lived in Laurel and maintained a checking account with the Bank of Laurel. Lonwell Barnwell had been living with Ms. Cooley for five or six months in her home.
Ms. Cooley sent her son to the Bank of Laurel to cash a $100.00 check on her account. Someone at the bank called Ms. Cooley to inform her that she did not have sufficient funds to cover the check, and asked her if she knew a "Lonwell" Barnwell *217 because he had recently cashed a $500.00 check on Ms. Cooley's account.
Barnwell was at Ms. Cooley's residence when she received this phone call. She asked him if he had indeed cashed such a check; the appellant denied having done so. When Ms. Cooley attempted to call the police, Barnwell "jumped up and slammed the phone out of my hand and down on the table and ran out the door." Ms. Cooley did not see him again until the day of the trial. Ms. Cooley was able to convince the bank that the check Barnwell cashed was a forgery, and it reimbursed her that amount.
Maria Hudson, a teller at the Bank of Laurel, testified that she had cashed a $500.00 check at the drive-up window on April 9, 1986, the day the crime allegedly took place. The check, payable to "Lonwell Barnwell", was endorsed in the same manner. Before cashing the check, Ms. Hudson asked for driver's license identification, and wrote the number on the back of the check. The number on the back of the check matched Barnwell's license number. Ms. Hudson positively identified the appellant as the man who cashed the check from a series of pictures shown to her less than two weeks after the crime took place. At trial, two years after the fact, she was less certain of her identification.
Frank Hicks, a handwriting expert with the Mississippi State Crime Laboratory, compared the handwriting on the check with several known samples of Barnwell's handwriting. He testified that the endorsement on the check and the known samples of Barnwell's handwriting were a match. He also noted certain irregularities in the writing on the front side of the check which led him to the conclusion that the writing on the front of the check might not represent the true handwriting characteristics of the writer.
Following the presentation of the State's case, Barnwell, who was attempting to try the case himself, aided by his appointed counsel, presented no witnesses. The jury, after deliberating some nine (9) minutes, found Barnwell guilty of the crime charged. After a bifurcated sentencing hearing, the trial judge sentenced Barnwell to fifteen (15) years incarceration at the Mississippi Department of Corrections, without parole, based on his status as an habitual offender under § 99-19-81, Miss. Code Ann. (Supp. 1990). Barnwell has now perfected his appeal to this Court.

II.

DID THE PROOF IN THIS CASE FAIL TO SHOW THAT THE APPELLANT HAD KNOWLEDGE THAT THE CHECK HE CASHED HAD BEEN FORGED?
Under this assignment of error, Barnwell is challenging the sufficiency of the State's proof; in effect he is asserting that the State never proved the elements of the offense charged, and that his motion for a directed verdict and/or a new trial should have been granted. His argument is without merit.
Barnwell relies on the authority of Keyes v. State, 166 Miss. 316, 148 So. 361 (1933), for the proposition that the prosecution must prove scienter, or knowledge, on the part of the appellant as to the fact of the check's falsity. Although his citation of Keyes is correct, the crucial issue before this Court is whether the State's proof created a sufficient question of fact so as to survive a motion for a directed verdict. Of utmost importance in considering this issue is the fact that Barnwell presented no evidence of his own to rebut the State's case.
In considering a motion for a directed verdict, a reviewing court must consider the evidence introduced in a light most favorable to the State, accepting all evidence introduced by the State as true, together with all reasonable inferences therefrom. If there is sufficient evidence to support the verdict, the motion for a directed verdict must be overruled. Davis v. State, 530 So.2d 694, 703 (Miss. 1988); Thompson v. State, 457 So.2d 953, 955 (Miss. 1984).
A motion for a new trial is left to the sound discretion of the trial judge. *218 Gavin v. State, 473 So.2d 952, 956 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984). A trial judge should grant such a motion only where he is convinced that the verdict is contrary to the substantial weight of the evidence. May, supra; Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983). In this case, the trial judge properly denied both the motion for a directed verdict and the motion for a new trial.
The proof in this case showed that the check which formed the basis for the charges was taken without Ms. Cooley's knowledge. She did not learn that the check was missing until the bank called to tell her that she had insufficient funds in her account to cash a $100.00 check. She was informed by the bank that one Lonell Barnwell had cashed a $500.00 check purportedly written by her, which, according to her testimony at trial, was done without her knowledge. She also testified that the handwriting on the check was not hers and that she had never given Barnwell permission to cash such a check. When she attempted to call the police, Barnwell slammed the phone down and ran from the house.
The bank teller who took the check positively identified the appellant as the man who cashed the check, and Frank Hicks, a forensic scientist from the Mississippi Crime Lab, also testified that the endorsement on the back of the check was definitely written by Barnwell.
Based on the overwhelming amount of proof offered by the State, and the total lack of proof offered by the appellant, the trial judge properly denied the motion for a directed verdict and the motion for a new trial. There is no merit to this assignment of error.

III.

DID THE STATE FAIL TO COMPLY WITH DISCOVERY?
Under this assignment of error, Barnwell asserts that the State failed to comply with Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice, which addresses the requirements for proper discovery. The purpose behind Rule 4.06 is to prevent what this Court has termed, "[t]he practice of trial by ambush ..." Coates v. State, 495 So.2d 464, 467 (Miss. 1986). This Court went on to say in Coates that "this Court has been required time after time in recent years to reverse criminal convictions because at trial the prosecution was allowed to use evidence which in discovery it was obligated to disclose to the defense but for whatever reason withheld." [Citations omitted]. Id.
It should be noted initially that the appellant in this case, Lonell Barnwell, had two attorneys appointed to represent him. Nonetheless, the State made every effort to reasonably comply with the discovery.
The district attorney noted that, if called to testify, he would state under oath that he was served by the appellant with a demand for discovery. He would also have testified that, although defense counsel at the time was the public defender, discovery was served on the appellant. Furthermore, an investigator for the district attorney's office testified that he prepared and delivered the discovery to the appellant in jail; on cross-examination, the appellant stated to the court that he had never seen the investigator before, and that he had never received a witness list.
Ronald Parrish, the public defender originally appointed to represent the appellant, testified that he received discovery from the State, which was accompanied by a list of the State's witnesses in chief. He additionally testified that, to his knowledge, nothing was withheld from him. On cross-examination, he testified that he received a witness list for the charge upon which the appellant was being tried, No. 6400. He also testified that while he did not give a list of witnesses to Barnwell, he did go over the list with him while Barnwell was in jail.
Lampkin Butts, the second attorney appointed to represent Barnwell, testified that he had made a copy of the prosecutor's file, and that the prosecutor's secretary had copied for him every item in the file. He further testified that he took the *219 copies to the appellant in jail, and although not supplied with a list of witnesses, he had discussed with the appellant each of the witnesses' names from the file. The attorney was not surprised at trial with any witnesses called by the State. The State complied with Rule 4.06 in this case, and this Court has noted no discovery violations. Therefore, there is no merit to this assignment of error. The conviction of Lonell Barnwell on the charge of uttering a forged document is affirmed.
ROY NOBLE LEE, Chief Justice, for the court as to part IV.
Under his final assignment of error, Barnwell asserts that the fifteen year sentence he received as an habitual offender, without hope of parole, constitutes cruel and unusual punishment. As authority, he cites this Court's opinion in Clowers v. State, 522 So.2d 762 (Miss. 1988).
Barnwell was indicted under Miss. Code Ann. § 97-21-59 (1972), for uttering a forgery and under Miss. Code Ann. § 99-19-81 as an habitual offender. The penalty for uttering a forgery is the same as the punishment for forgery itself. Miss. Code Ann. § 97-21-33 (1972), provides that the penalty for forgery is a term of not less than two years, nor more than fifteen years. The indictment which charged Barnwell as an habitual offender noted that he had two prior felony convictions: A July 9, 1971 conviction for theft of personal property of the value of $50.00 or more, for which he received a seven year prison term in Texas, and a March 6, 1972 federal conviction in Texas for possession of stolen mail, for which he received a five year term. Miss. Code Ann. § 99-19-81 provides:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution whether in this state or elsewhere shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-81 (Supp. 1990) (emphasis added).
It is clear under the facts of this case and the applicable statutes that if Barnwell was found guilty of the charge of uttering a forgery he could be sentenced as an habitual offender under Miss. Code Ann. § 99-19-81 to fifteen (15) years without hope of parole.
Barnwell was indeed found guilty of forgery by a jury after deliberations of only nine (9) minutes. The trial judge found beyond a reasonable doubt that the defendant was an habitual offender within the scope of Miss. Code Ann. § 99-19-81 and sentenced Barnwell to fifteen years imprisonment.
Our Eighth Amendment analysis is guided by two factually dissimilar cases from the United States Supreme Court, Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) and Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
In Rummel, the petitioner had previously been convicted of two non-violent felonies: fraudulent use of a credit card to obtain $80 in goods and services and passing a forged check in the amount of $28.36. Upon conviction of his third felony, obtaining $120.75 by false pretenses, Rummel was deemed to be an habitual criminal within the purview of the Texas habitual criminal statute and was sentenced pursuant to the mandate of that statute to life in prison with possibility of parole. According to the Texas habitual criminal scheme, Rummel would be eligible for parole in twelve (12) years. Rummel, 445 U.S. at 267, 100 S.Ct. at 1136. In the context of that case, the majority of the United States Supreme Court rejected the three prong proportionality analysis offered by the dissent which was ultimately adopted in Solem three years later, and held that the sentence imposed on the petitioner did not violate the Eighth Amendment. The Court noted that "[o]utside the context of capital *220 punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." Rummel, 445 U.S. at 272, 100 S.Ct. at 1138.
In Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) the petitioner had previously been convicted of six non-violent felonies prior to his conviction of uttering a "no account" check for $100. After this final conviction, a South Dakota trial court sentenced Helm to life without parole pursuant to that state's recidivist statute. Solem, 463 U.S. at 282, 103 S.Ct. at 3006. The majority opinion in Solem held that the life sentence without parole was disproportionate and set out three "objective criteria" to guide a reviewing court's proportionality analysis: 1) the gravity of the offense and the harshness of the penalty; 2) the sentences imposed on other criminals in the same jurisdiction; and 3) the sentences imposed for commission of the same crime in other jurisdictions.
The Court in Solem, stated that it's decision was not inconsistent with Rummel v. Estelle. Solem, 463 U.S. at 303 n. 32, 103 S.Ct. at 3017 n. 32 and expressly distinguished the two cases by stating that Rummel was eligible for parole while Helm was sentenced to life without possibility of parole. Id. Further, Rummel was still controlling in "similar factual situation[s]" Id.
The Court reiterated that "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare," Solem, 463 U.S. at 289-290, 103 S.Ct. at 3009, (quoting Rummel, 445 U.S. at 272, 100 S.Ct. at 1138). Also, the Court stated:
[W]e do not adopt or imply approval of a general rule of appellate review of sentences. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.
Solem, 463 U.S. at 290 n. 16, 103 S.Ct. at 3009-10 n. 16.
This is not the first time this Court has addressed the issue of cruel and unusual punishment in the context of an habitual offender whose third conviction was forgery or uttering a forgery. A review of our previous decisions in this area is necessary and enlightening.
In 1984, this Court applied Eighth Amendment analysis to a factual situation nearly identical to the one presented today. In Seely v. State, 451 So.2d 213 (Miss. 1984) the appellant had previously been twice convicted of non-violent felonies. His third conviction was for forgery and he was sentenced as an habitual offender to fifteen (15) years without parole pursuant to Miss. Code Ann. § 99-19-81. He appealed to this Court and argued that his sentence was cruel and unusual and violated the Eighth Amendment.
After studying both Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) and Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) this Court unanimously held that the appellant's sentence did not violate the Eighth Amendment. Seely, 451 So.2d at 215-16. Justice Sullivan, writing for the Court stated:
The facts here are clearly similar to the situation governed by Rummel v. Estelle, supra. Here, as in Rummel, appellant was convicted of three non-violent felonies. Also, very little money was involved in this case. Sentencing in the two cases was similar. In Rummel, defendant was sentenced to life but was eligible for parole in twelve years. The practical effect of that sentence was twelve years without parole or probation,  a quantitative difference of only three years. It should further be noted that while Rummel would be eligible for parole in twelve years, he is not guaranteed parole in that span of time. The United *221 States Supreme Court found that sentence under those factual circumstances did not violate the Eighth Amendment.
Further, the Solem Court recognized that legislatures and sentencing courts should be given "substantial deference" and, combining this with the need for individualized sentencing results in a "wide range of constitutional sentences." Even under Solem then what remains to be determined would be whether the sentence is "grossly disproportionate." The three-year difference between Rummel and appellant here falls within that range of constitutional sentences and does not make one "grossly disproportionate" while the other is not.
Because Solem v. Helm expressly finds that Rummel v. Estelle has not been overruled, and with the factual situation here being far more similar to that of Rummel, we find that the second assignment of error is without merit and there is no Eighth Amendment violation.
Seely, 451 So.2d at 215-16.
Two years later, in 1986, this Court decided Burt v. State, 493 So.2d 1325 (Miss. 1986), another case directly on point. There the appellant was convicted of uttering a forgery and was sentenced as an habitual offender pursuant to § 99-19-81. His conviction as a habitual offender was based on the forgery conviction and two separate felony convictions of burglary of a dwelling house. This Court again rejected an argument based on Solem v. Helm that a sentence of fifteen (15) years without parole for a forgery conviction which was enhanced under § 99-19-81 by two previous non-violent felonies, was a violation of the Eighth Amendment. Burt, 493 So.2d at 1330. The Court aptly stated:
It is urged on us that this case has some relationship to Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); Whitmore v. Maggio, 742 F.2d 230 (5th Cir.1984); and Presley v. State, 474 So.2d 612 (Miss. 1985). A review of these cases convinces us that any relationship is that of distant cousins and is not persuasive.
Burt, 493 So.2d at 1330.
In Clowers v. State, 522 So.2d 762 (Miss. 1988), which the appellant relies on heavily, the trial court sentenced the appellant to five years without parole for uttering a forged check, rather than the maximum of fifteen (15) years without parole as was required by Miss. Code Ann. § 99-19-81. In affirming the trial judge's decision, this Court noted that its approval of the sentence in that case should not be taken to mean that reduced sentences for habitual offenders should become the rule. Clowers, 522 So.2d at 765. We further noted:
What we hold today  and all we hold  is that the trial court did not commit reversible error in reducing what it found to be a disproportionate sentence under the facts of this case.
Clowers, 522 So.2d at 765.
Clowers, by its own statement, is limited to its own distinctive facts and procedural posture. The appellant's reliance on this case is misplaced.
In Solem, the Supreme Court determined that life without parole was an excessive punishment considering the non-violent nature of the defendant's crimes. Barnwell's prior crimes were also non-violent, but his punishment of fifteen (15) years without parole is also considerably less severe. When the facts of Solem and Rummel and the conclusions of the Supreme Court in those cases are examined, it is clear that this Court in Seely and Burt correctly concluded that Solem is inapplicable.
There are general principles which can be drawn from the Supreme Court's rulings in Rummel and Solem which have been adopted by a number of jurisdictions and which we now adopt. In cases factually similar to Rummel, Rummel provides the rule. Apart from the factual context of Solem  a sentence of life in prison without the possibility of parole  or a sentence which is manifestly disproportionate to the crime committed (e.g. life sentence for overtime parking, see, Rummel, 445 U.S. at 274 n. 11, 100 S.Ct. at 1139 n. 11) extended proportionality analysis is not required by the Eighth Amendment. Moreno v. Estelle, 717 F.2d 171, 180 (5th Cir.1983), cert. denied, 466 U.S. 975, 104 S.Ct. 2353, 80 *222 L.Ed.2d 826 (1984); United States v. Rosenberg, 806 F.2d 1169, 1175 (3rd Cir.1986), cert. denied, 481 U.S. 1070, 107 S.Ct. 2465, 95 L.Ed.2d 873 (1987); United States v. Rhodes, 779 F.2d 1019, 1028 (4th Cir.1985), cert. denied, 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986); Chandler v. Jones, 813 F.2d 773, 778-79 (6th Cir.1987); Holley v. Smith, 792 F.2d 1046, 1049 (11th Cir.1986); State v. Wilson, 687 S.W.2d 720, 726 (Tenn.Cr.App. 1984), cert. denied 472 U.S. 1030, 105 S.Ct. 3508, 87 L.Ed.2d 638 (1985); State v. Carlton, 733 S.W.2d 23, 27 (Mo. App. 1987); McGee v. State, 467 So.2d 685, 690 (Ala.Cr.App. 1985); Simpson v. State, 668 S.W.2d 915, 919 (Tex. App. 1984); State v. Weiker, 366 N.W.2d 823, 826-27 (S.D. 1985); Minor v. State, 313 Md. 573, 546 A.2d 1028, 1031 (1988); Maxwell v. State, 775 P.2d 818, 820 (Okl.Cr. 1989); Taylor v. State, 511 N.E.2d 1036, 1038-40 (Ind. 1987); People v. Hererra, 728 P.2d 366, 367 (Colo. App. 1986); Williams v. State, 539 A.2d 164, 173 (Del. 1988).
These principles are consistent with the Supreme Court's overriding theme expressed in both Solem and Rummel, of giving substantial deference to the legislature in determining the limits of punishment for crimes, as well as recognizing the discretion of trial courts in sentencing criminals. Further, they are consistent with our own prior case law on this subject. Though no sentence is "per se" constitutional, this Court, in the context of our habitual statutes, as well as in sentencing other offenders, has recognized the broad authority of the legislature and trial court in this area and has repeatedly held that where a sentence is within prescribed statutory limits, it will generally be upheld and not regarded as cruel and unusual. Byrd v. State, 522 So.2d 756, 760 (Miss. 1988); Whitley v. State, 511 So.2d 929, 932 (Miss. 1987); Adams v. State, 410 So.2d 1332, 1334 (Miss. 1982); Baker v. State, 394 So.2d 1376, 1378 (Miss. 1981); Anderson v. State, 381 So.2d 1019, 1024 (Miss. 1980); Green v. State, 270 So.2d 695, 697 (Miss. 1972); See also, Williams v. State, 456 So.2d 852, 856 (Ala.Cr.App. 1984); United States v. Berryhill, 880 F.2d 275 (10th Cir.1989).
This assignment of error is without merit.
GUILTY OF UTTERING A FORGED DOCUMENT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI STATE PENITENTIARY UNDER THE PROVISIONS OF THE HABITUAL OFFENDER'S STATUTE, WITHOUT BENEFIT OF PAROLE, EARLY RELEASE, SUSPENSION, REDUCTION OF SENTENCE AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
PRATHER and ANDERSON, JJ., concur as to parts I, II, and III and dissent as to part IV.
PRATHER, Justice, dissenting as to part IV:
While concurring with the affirmance of Barnwell's conviction for uttering a forged document, I respectfully dissent to the sentence of Barnwell to fifteen years without probation or parole as an habitual offender. In my view this Court should address the propriety of a statutory sentence of an habitual offender for non-violent crimes in balance with constitutional mandates against cruel and unusual punishment.
Article 3, Section 28, Mississippi Constitution states the "[c]ruel or unusual punishment shall not be inflicted... ." The same prohibition is found in the United States Constitution in Amendment VIII.
Initially, it is important to note that Barnwell does not challenge the constitutionality of the recidivist statute, nor does he challenge this state's authority to imprison him in the state penitentiary. However, Barnwell does assert that the fifteen year sentence he received as an habitual offender, without hope of parole, for forging a $500.00 check constitutes cruel and unusual punishment. As authority, he cites this Court's opinion in Clowers v. State, 522 So.2d 762 (Miss. 1988).
The indictment under which the appellant was charged as an habitual offender notes that he had two prior felony convictions: A July 9, 1971 conviction for theft of personal *223 property of the value of $50.00 or more, for which he received a seven year prison term in Texas, and a March 6, 1972 federal conviction in Texas for possession of stolen mail, for which he received a five year term. Thus, if Barnwell was found guilty of the charge of uttering a forgery under Miss. Code Ann. § 97-21-59 (1972), he could be sentenced as an habitual offender under Miss. Code Ann. § 99-19-81 (Supp. 1989). The statute under which Barnwell was indicted, Miss. Code Ann. § 97-21-59, states that the penalty for uttering a forgery is the same as the punishment for forgery itself. Miss. Code Ann. § 97-21-33, states that the penalty for forgery is a term of not less than two years, nor more than fifteen years. Pursuant to the authority of § 99-19-81, the trial judge did in fact sentence Barnwell to fifteen years imprisonment.
The crucial issue under this assignment of error is whether or not such a sentence was proper in this case. This Court has held on previous occasions that this Court will defer to the trial judge's sentence if the correct criteria are applied, and will not disturb if the sentence is within statutorily prescribed limits. McClendon v. State, 539 So.2d 1375, 1377 (Miss. 1989); Gibson v. Manuel, 534 So.2d 199, 204 (Miss. 1988); Detroit Marine Engineering v. McRee, 510 So.2d 462, 467 (Miss. 1987). This appeal addresses the enhancement of the sentence under the habitual offender statute as violative of the Eighth Amendment.
Our proportionality review in this case must begin with the leading United States Supreme Court case on the subject. In Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the U.S. Supreme Court held that a criminal sentence must not be disproportionate to the crime for which the defendant is being charged. 463 U.S. at 290, 103 S.Ct. at 3009, 77 L.Ed.2d at 649. This holding is premised upon constitutional guarantees against cruel and unusual punishment. Miss. Const., Art. 3, Sec. 28, U.S. Const. Am. VIII. The Solem majority noted that a proportionality analysis is necessary because "[n]o penalty is per se constitutional." 463 U.S. at 290, 103 S.Ct. at 3009-10, 77 L.Ed.2d at 649. In order to determine the constitutionality of a particular sentence, Solem mandates the application of the following three-part test:
(1) The gravity of the offense and the harshness of the penalty.
(2) A comparison of the sentence with sentences imposed on other criminals in the same jurisdiction.
(3) A comparison of the sentence with sentences imposed for the commission of the same crime in other jurisdictions.
463 U.S. at 290-91, 103 S.Ct. at 3009-10, 77 L.Ed.2d at 649-50.
Adherence to the holding in Solem requires a step by step discussion of these three factors.

(1) THE GRAVITY OF THE OFFENSE AND THE HARSHNESS OF THE PENALTY
Barnwell was tried and convicted for uttering a forgery, in this case a check for $500.00. His prior convictions, which formed the basis for his habitual offender status, were for the theft of property worth more than $50.00 and for being in the possession of stolen mail.
Solem requires that a reviewing court examine the "gravity" of the crime with which a defendant is charged. Each of these three convictions must be characterized as non-violent crimes. As such, they are traditionally considered "less serious than crimes marked by violence or the threat of violence." 463 U.S. at 292-93, 103 S.Ct. at 3011, 77 L.Ed.2d at 651. Reviewing courts have often emphasized this factor when conducting a proportionality review. See, Cocio v. Bramlett, 872 F.2d 889, 891 (9th Cir.1989); Williams v. Johnson, 845 F.2d 906, 910 n. 3 (11th Cir.1988). Williams is particularly significant because it is the only Federal appellate court case our research has uncovered which features a habitual offender who also happened to be charged with forgery. Although Williams' proportionality challenge ultimately proved unsuccessful, the case contained a crucial distinguishing factor not present here. Williams was convicted on five counts of forgery, and was also *224 sentenced as a habitual offender. Despite receiving a life sentence on each of the five charges, it was stipulated by both parties that he would be eligible for parole seven years after he was first arrested. 845 F.2d at 908-09. The Eleventh Circuit considered this fact to be extremely important in its rejection of Williams' claim.
Whether a defendant is eligible for parole was also deemed to be of critical importance in Solem. 463 U.S. at 297, 103 S.Ct at 3013, 77 L.Ed.2d at 654. See also, Williams, 845 F.2d at 910. The Supreme Court noted that Helm had been sentenced to life imprisonment without hope of parole, which contrasted sharply with the factual scenario in Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).[1]
Thus, neither of the two foremost reasons for upholding a conviction under the proportionality analysis used in Solem, i.e., crimes of violence and the possibility of parole, are present here. None of the crimes Barnwell committed involved the use of violence, or the threat of violence against a person or his property.

(2) A COMPARISON OF THE SENTENCE WITH SENTENCES IMPOSED ON OTHER CRIMINALS IN THE SAME JURISDICTION
Under the second part of the three-pronged Solem test, a reviewing court must look at sentences imposed for other crimes in the same jurisdiction. "If other criminals who are convicted of more serious crimes receive the same or less severe sentences, then it may be an indication of disproportionality." Cocio, 872 F.2d at 894.
At least one trial court in this jurisdiction has mentioned specific sentencing inequalities associated with the statute at issue in this case.
I personally have testified before committees of the Mississippi Legislature in their attempt to make a determination of what to do with the crowded conditions in the State Penitentiary. I have pointed out to them this particular statute, that is, the maximum sentence for forgery. In my opinion, it is disproportionate to the maximum sentence for a more serious crime in the State of Mississippi. It's more serious  carries a higher maximum sentence than burglary, that is, business burglary and house burglary and carries the same maximum sentence for house burglary of an occupied dwelling and carries a higher maximum sentence than attempted murder and has a much higher sentence than grand larceny. Those are just some of the examples that I can state off the top of my head. In addition, when it's applied to a no-parole situation, if  if the maximum sentence is applied, it requires that a defendant serve a longer sentence than an individual who's convicted [of] life sentence and receives a *225 life sentence, that is, they're eligible for parole consideration after ten years. As I say, I find as a fact that the maximum sentence for forgery, as applied under the circumstances of this case would be disproportionate to sentences in other crimes set out in this jurisdiction. ...
Clowers v. State, 522 So.2d 762, 764 (Miss. 1988) (Emphasis added) (quoting Hon. William F. Coleman, Circuit Judge.) This case involved the uttering of a forged check as well, and the defendant was sentenced as an habitual offender. Judge Coleman refused to sentence Clowers to the full fifteen (15) year term of incarceration, sentencing him instead to five (5) years without parole. This Court affirmed.
Thus, it is clear that the issue of proportionality review and how the sentence for uttering a forgery compares to more serious crimes, has been discussed previously, both by this Court and by the circuit courts. A brief comparison of possible sentences for the commission of other crimes in the State of Mississippi will further emphasize the inherent flaws in this particular statute.
Under present Mississippi law, the penalty for assault[2] is up to six (6) months in the county jail and/or a fine of up to $500.00. See, Miss. Code Ann. § 97-3-7(1) (Supp. 1989). The penalty for aggravated assault is one (1) to twenty (20) years incarceration in Parchman. See, Miss. Code Ann. § 97-3-7(2), (Supp. 1989). The penalty for attempted murder, as defined in Miss. Code Ann. § 97-1-7 (1972) is up to ten (10) years imprisonment in Parchman. A conviction for manslaughter would result in a penalty of up to one (1) year in the county jail and/or not less than a $500.00 fine, OR two (2) to twenty (20) years in Parchman. See, Miss. Code Ann. § 97-3-25 (1972).
Moving to the burglary charges mentioned by Judge Coleman in Clowers, the penalty for burglary (breaking and entering a dwelling) is up to ten (10) years in Parchman. See, Miss. Code Ann. § 97-17-19 (1972). The burglary of an inhabited dwelling carries a penalty of seven (7) to fifteen (15) years in Parchman (Miss. Code Ann. § 97-17-21 [1972]), while the burglary of a building other than a dwelling results in imprisonment for up to seven (7) years. See, Miss. Code Ann. § 97-17-33 (Supp. 1989). Finally, the penalty for a grand larceny conviction is up to five (5) years imprisonment in Parchman and/or up to a $1000.00 fine. See, Miss. Code Ann. § 97-17-41 (1972).[3]
The habitual offender statute under which Barnwell was convicted, Miss. Code Ann. § 99-19-81 (Supp. 1989), reads as follows:

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

(Emphasis added).
A combined reading of § 99-19-81 and the previously mentioned statutes would result in the following sentences for a habitual offender:

Offense Sentence
Assault Not a felony
Aggravated Assault 20 years
Attempted Murder 10 years
Manslaughter 20 years
Burglary 10 years
Burglary (Inhabited Dwelling) 15 years
Burglary (Other Than Dwelling) 7 years
Grand Larceny 5 years
Uttering A Forgery 15 years

*226 A review of these potential sentences points out several troubling facts. Under Mississippi law, Lonell Barnwell, who has never been convicted of a violent crime, would receive a stiffer sentence than anyone convicted as a habitual offender for one of the above crimes, other than aggravated assault and manslaughter. Even more troubling is the fact that several, if not all, of these crimes involve violence or the threat of violence. Under our sentencing structure, Barnwell would have received a lighter sentence for attempted murder than he received for uttering a forged check.[4]

(3) A COMPARISON OF THE SENTENCE WITH SENTENCES IMPOSED FOR THE COMMISSION OF THE SAME CRIME IN OTHER JURISDICTIONS
Finally, Solem requires a comparison of the sentence received in the case sub judice with those imposed in other jurisdictions. Under this portion of the Solem analysis, it is helpful to compare the sentences imposed to better ascertain how Mississippi's penalty for the crime of uttering a forgery[5] compares to those of other states.
At least one state does not even classify the uttering of a forged instrument as a forgery. In Alaska, forgery in the third degree is a Class A misdemeanor, with a maximum sentence of up to one (1) year's imprisonment. See, Alaska Stat. § 11.46.510(a)(3) (1989).
In Arkansas, uttering a forgery is considered forgery in the second degree and is a Class C felony, punishable by three (3) to ten (10) years' imprisonment. See, Ark. Stat.Ann. §§ 5-37-201(c)(1), 5-4-401(a)(4). Florida classifies the uttering of a forgery as a third degree felony, and it is punishable by up to five (5) years' imprisonment. See, Fla. Stat. Ann. §§ 831.02, 775.082(3)(d) (West 1976). In the state of Georgia, forgery in the first degree is punishable by one (1) to ten (10) years' imprisonment. See, Ga. Code Ann. § 16-9-1 (1988). In Kentucky, uttering a forgery is classified as a Class D felony, punishable by one (1) to five (5) years' imprisonment. See, Ky. Rev.Stat. §§ 516.060, 532.020 (1985). Louisiana sentences anyone convicted of forgery to up to ten (10) years' imprisonment and/or up to a $5000.00 fine. See, La. Rev. Stat. Ann. § 14:72 (West 1981).
In North Carolina, uttering a forgery is a Class I felony; the punishment for such a criminal offense is up to five (5) years' imprisonment and/or a fine. See, N.C. Gen. Stat. §§ 14-1.1, 14-120 (1989). Oklahoma classifies uttering a forgery as forgery in the second degree, punishable by up to seven (7) years' imprisonment. See, Okla. Stat. Ann. tit. 21 § 1592 (West 1983). In South Carolina, forgery is punishable by one (1) to seven (7) years' imprisonment. See, S.C. Code Ann. § 16-13-10 (Law.Co-op. 1976). Finally, in Tennessee, forgery is a Class E felony, punishable by one (1) to six (6) years' imprisonment and a possible fine of up to $3000.00. See, Tenn. Code Ann. § 39-14-114 (1989). Thus, Mississippi's maximum sentence for uttering a forgery exceeds the maximum possible sentence for each of the aforementioned states.
The crucial factor in this case however, is how each of these states' habitual offender statutes for uttering a forgery compare to ours. The following is a state by state comparison of those statutes:

*227
State Statute Sentence
 Alaska none not a felony
 Arkansas § 5-4-501 6-20 years
 Florida § 775.084(4)(a)(3) up to 10 years
 Georgia § 17-10-7 Maximum, with sentencing discretion
 Kentucky not applicable All sentences for prior convictions
 must have been completed
 within five (5) years of commission
 of pending charge[6]
 Louisiana § 15:529.1 Two-thirds to 2X Maximum
North Carolina § 14-7.1 Must have three prior convictions
 Oklahoma Title 21 § 51 Not less than 20 years[7]
South Carolina none not a violent crime
 Tennessee none no habitual offender statute

Only one of the states listed above, Oklahoma, mandates a stiffer sentence than the one Barnwell received here  and he would not have been convicted as a habitual offender there in the first place because each of his two prior convictions is more than ten (10) years old.
It is readily apparent that under each of the three (3) components of the Solem v. Helm proportionality test, Lonell Barnwell's sentence in this case was disproportionate to the crime he committed.
In several previous decisions by this Court, we have reversed and remanded habitual offender convictions of non-capital cases based on Solem v. Helm. See, Ashley v. State, 538 So.2d 1181 (Miss. 1989) (Conviction of defendant who had stolen two cans of sardines affirmed, but sentence as a habitual offender remanded for resentencing); Clowers v. State, 522 So.2d 762 (Miss. 1988) (Trial judge refused to sentence defendant who had uttered a forged check to fifteen years imprisonment, without parole, as a habitual offender; his sentence of five years without parole affirmed by this Court); Presley v. State, 474 So.2d 612 (Miss. 1985) (Forty year term, without parole held improper; case remanded for resentencing). Two cases from this Court, Seely v. State, 451 So.2d 213 (Miss. 1984) and Burt v. State, 493 So.2d 1325 (Miss. 1986), failed to follow the Solem analysis. Barnwell's challenge to his sentence relies upon Clowers, supra. I respectfully submit that Presley, Clowers, and Ashley, supra, all legally support Barnwell's asignment of error regarding sentence. Therefore, my view is to remand for the circuit court's reconsideration of sentence consistent with the holding in Solem v. Helm, Presley, Clowers, and Ashley, supra.
ANDERSON, J., joins this dissent.
NOTES
[1] An attempt to reconcile Rummel with the facts of this case is impossible because the two cases are clearly distinguishable. Rummel's "life sentence" allowed him to be eligible for parole in only twelve (12) years. He was in fact released only 8 months after the U.S. Supreme Court's decision. 463 U.S. at 297, 103 S.Ct. at 3013, 77 L.Ed.2d at 654, n. 25. Contrast Rummel's fate with Barnwell, who will spend fifteen (15) years in Parchman, without hope of parole, if the trial court's sentence is affirmed.

Many legal commentators have written that Solem effectively overruled Rummel. See, e.g., Bradley, "Proportionality in Capital and Non-Capital Sentencing: An Eighth Amendment Enigma," 23 Idaho L.Rev. 195, 211 (1986) ("Solem is important ... because the Court effectively wrote Rummel out of the body of eighth amendment case law ..."); Cover, "The Supreme Court 1982 Term, Foreword: Nomos and Narrative," 97 Harv.L.Rev. 4, 128 (1983) (In Solem v. Helm, "the Court refrained from explicitly overruling Rummel, but repudiated much of the reasoning on which that decision relied"); Note, "Solem v. Helm: The Courts' Continued Struggle to Define Cruel and Unusual Punishment," 21 Cal.W.L.Rev. 590, 608 (1985) ("Solem does not technically overrule Rummel. However, in theory it must overrule Rummel and its practical consequences are inimical"); Comment, "Solem v. Helm: Extension of Eighth Amendment Proportionality Review to Noncapital Punishment," 69 Iowa L.Rev. 775, 792 (1984) ("[B]y limiting Rummel to its facts and reinterpreting Rummel's holding, as suggested by the majority in Helm ..., Helm may have restricted Rummel to such an extent as to have overruled it, even while purporting not to do so"). Thus, an argument can be made that reliance on Rummel in this case is improper, both factually and precedentially.
[2] First time offense.
[3] It should also be remembered that many first time offenders who receive a life sentence would be eligible for parole before Barnwell, who received fifteen (15) years without parole. See, Clowers, 522 So.2d at 764.
[4] Putting legal analysis aside for the moment, the net effect of affirming Barnwell's conviction would be to place a non-violent habitual offender in prison without hope of parole for fifteen (15) years while criminals with a history of violence will almost certainly be paroled sooner due to our overcrowded prison system. See, Clowers, 522 So.2d at 764.
[5] In some states, "uttering" a forgery is not listed as a crime. In those jurisdictions, the comparison is made with their substantive forgery statutes. Whenever possible, an attempt will be made to note when a statute covers the uttering of a forgery. Also, any references to forgery or "uttering" a forgery in this portion of the opinion are to checks only. This distinction is necessary because many states base their sentencing structure for forged instruments on what type of instrument is forged.
[6] Barnwell's prior convictions date back to 1971 and 1972. The present charges originated in April of 1986. Exhibits introduced in the case sub judice show that Barnwell was out of prison by at least 1979, more than five (5) years prior to the time he uttered the check in question. (State's Ex. 8).
[7] Previous convictions forming basis for habitual offender status must be less than ten (10) years old.